In the Matter of the Estate of SAM ROSENZWEIG, Deceased. EMANUEL ROSENZWEIG, Respondent; ARANKA KLEIN, as Trustee Under a Trust Created by SAM ROSENZWEIG, Deceased, Appellant.

First Department, December 26, 1967.

*Isidore Beerman* of counsel (*Beerman, Gaspari & Beerman,* attorneys; *Julia Sherman* and *Leon A. Beerman* with him on the the brief), for appellant.

*Edmund B. Hennefeld* of counsel (*Margolies & Geldzahler,* attorneys; *Irving Margolies* and *Lawrence I. Drath* with him on the brief), for respondent.

WITMER, J. The primary question before the court on these appeals is the effect of the decree herein of Surrogate Cox, dated June 25, 1963, affirmed by the Court of Appeals in 19 N Y 2d 92. Respondent contends that such prior decree is *res judicata* as to the construction issue presented to us by the appellant. We hold that the prior decree and its affirmance did not reach the construction issue presented on this appeal, and that therefore we must determine that issue.

The testator devised and bequeathed the residue of his property to his trustees to pay 15% of the income therefrom, but not less than $350 per month, to his brother, the respondent, for life or until the prior death of testator's daughter Erica, and if the brother die before Erica, the same to be held in trust for her; 85% of the income therefrom as follows: 15%, but not less than $300 per month, to his wife, Aranka, and 70% but not less than $300 per month, to his daughter Erica for their lives, but upon the death or marriage of Aranka her interest in the trust should terminate and be payable to respondent brother; and the testator directed that upon Erica attaining 30 years of age the trustees pay over to her one half " of *her then share* in the principal of said trust, continuing thereafter to pay her the income of *her remaining half* share during her lifetime or until she shall attain the age of thirty-five years, and upon her reaching the age of thirty-five, I direct my trustees to pay over to her outright, the balance of *her share* of said trust." (Emphasis added.) The testator provided that the trust should be measured by the life of his daughter, and should she die before the funds are exhausted, he directed that they be distributed according to the occurrence of various contingencies.

By paragraph FIFTH it was further provided that " If in any month, the income of the aforesaid trust shall be insufficient to yield the minimum monthly income provided herein for each of my above-named beneficiaries, then and in that event, I authorize and direct my said trustees to make up the deficiency or, deficiencies for any such month or months out of the principal of said trust, hereby authorizing and empowering my said trustees to invade the principal of said trust to the extent necessary to make up said deficiency or deficiences."

Aranka, the widow, elected to take against the will. In a proceeding before Surrogate COLLINS he held that " The exercise of her right of election as effectively *terminates* her interest in said trust as the conditions [death or remarriage] prescribed by the testator " (*Matter of Rosenzweig*, 4 Misc 2d 142, 144, affd. 7 A D 2d 969), and he decreed that the widow's interest in the trust " thereby terminated and that the share of income bequeathed to her in said Article 'FOURTH' is payable to the respondent EMANUEL ROSENZWEIG ". He reserved for a subsequent accounting proceeding the computation of the widow's intestate share and the actual contributions thereto by the other interests under the will.

In a later proceeding it was sought, in behalf of the daughter Erica, to have the intestate share to which the widow was entitled under her election made up by first applying to it the

testamentary share provided for her in the will and then make up the deficiency from the remaining estate assets. Surrogate Cox declined to do this, holding that Surrogate COLLINS' decision (*supra*) was *res judicata,* and that " the elective share of the widow * * * is to be apportioned pro rata between the general legacy to the brother and the principal of the residuary trust." Although this court reversed Surrogate Cox's decree (23 A D 2d 427), the Court of Appeals reinstated it. (*Matter of Rosenzweig,* 19 N Y 2d 92.)

It is noted that in his decree, June 25, 1963, Surrogate Cox directed in part that the trustee pay to respondent " 15% of the net income, but not less than $300 per month from *that portion of the trust* * * * which portion was bequeathed in the first instance to Aranka * * * and in the event that the net income *from the aforesaid portion* of the residuary trust shall not be equal to at least the sum of $300 a month, to pay from the principal of the aforesaid trust that amount which together with income from the *aforementioned portion of* the trust shall equal the sum of $300 per month ". (Emphasis added.) It is further noted that in the opinion of this court reversing said decree we agreed (23 A D 2d 427, 432) with the interpretation by Surrogate Cox that the trust was implicitly divided into three portions, to wit, two of 15% each and the other of 70% of the total fund. Such informal division is consonant with good trust administration practice, to carry out the testator's intention. (See *Leach* v. *Godwin,* 198 N. Y. 35; *Matter of Colegrove,* 221 N. Y. 455, 459; and *Matter of Horner,* 237 N. Y. 489.) It is clear also that the Court of Appeals, in reversing this court and reinstating the decree of the Surrogate, did not hold or even intimate that they disagreed with the Surrogate in this respect or with the aforesaid concurring analysis made by us of the nature of the trust. The disagreement arose out of the adoption by this court of the ruling of *Matter of Curley* (160 Misc. 844) instead of that of *Matter of Byrnes* (149 Misc. 449) with respect to charges against the testamentary dispositions, to make up the intestate share for the widow after she elected to take against the will.

Under the decree of Surrogate COLLINS of January 26, 1956 the amount of the residuary established in paragraph FOURTH of the will was reduced to make up part of the elective share of the widow. Although argument has been made that the bequests to appellant and respondent in paragraph FOURTH constitute annuities, we agree with the prior rulings referred to above that such bequests are not annuities and are trust benefits. (See *Matter of Folsom,* 155 N. Y. S. 2d 140, 148, affd.

6 A D 2d 691, affd. 6 N Y 2d 886; and *Matter of Graczyk,* 66
N. Y. S. 2d 750, 757 *et seq.*) Note that all the income of the
respective portions of the residuary fund was payable to the
respective beneficiaries, which is a peculiar characteristic of
a trust as opposed to an annuity. (*Matter of Clark,* 251 N. Y.
458.) Moreover, it is not a mere matter of nomenclature —
substantive rights in the corpus of the residue, with correlative
duties on the part of the trustee, are involved. (See *Matter of
Maybaum,* 296 N. Y. 201, 205; *Matter of Graczyk, supra,* pp. 758–
759.) Thus, the court below, in its decree of July 12, 1967, erred
in decreeing, in effect, that the testator had created annuities
payable from a common fund for the respective beneficiaries
under paragraph FOURTH of the will.

Respondent's major argument in support of his contention
that the decree of Surrogate Cox is *res judicata* on the issue
before us is based upon the fact that both before Surrogate Cox
and the Court of Appeals the appellant (or her daughter), after
receiving adverse decisions on the issue of the source of the
funds to make up the widow's intestate share, sought reargu-
ment, and in an effort to show the dire consequences which
would result from those rulings, made some of the arguments
advanced on this appeal. But the fact that those courts never-
theless adhered to their decisions does not mean that they ruled
on such arguments as addressed to the issue now before us,
because this issue was not before them. Moreover, the record
shows that Surrogate Cox struck out from the proposed decree
submitted to him on his opinion, provisions which might preju-
dice the future rights of others in the respective trusts, and this
supports our view. Thus, although Surrogate Cox correctly
held that Surrogate COLLINS' ruling was *res judicata* as to pay-
ment of trust income and minimum monthly payments, no
consideration was then given to a breakdown of the residuary
trust in accordance with the percentages of income bequeathed
and to the ultimate exhaustion of the respective principal funds;
and such matters were then unnecessary to the decision, and
they were not decided. This fact is the nub of this appeal.
That the Court of Appeals said that it would not approve what
it believed to be a wrong rule for providing the intestate share
for a spouse who elected to take against the will, even though
the rule adopted may work a hardship on the testator's daughter
(19 N Y 2d 92, 99, *supra*), does not indicate any disposition by
that court to ignore the rule that in the absence of contrary
provision a testator is presumed to prefer his closest relatives
(see *Matter of Rooker,* 248 N. Y. 361, 364; *Matter of Werlich,*
230 N. Y. 516). We must, therefore, consider the construction

of the will with respect to the issue tendered on this appeal, namely, the right of respondent as beneficiary of the two 15% trust portions of the residuary to continued payments from the trust after the exhaustion of the principal of such two 15% portions.

The testator gave the major part (70%) of the residue of his estate for the benefit of his daughter Erica, and provided that if his brother should predecease Erica, she should receive the benefits of his share. Unquestionably, the testator has shown a natural interest in and desire to benefit his daughter. In case of ambiguity in a will that construction should be adopted which will best carry into effect the testator's intention as gleaned from all the provisions of his will. (*Matter of Buechner,* 226 N. Y. 440, 444.)

Recognizing that there might not be sufficient principal to generate the minimum monthly income payments which he wished to have made to the trust beneficiaries, the testator provided (par. FIFTH, quoted above) for invasion of principal to make up such " deficiency or deficiencies " where needed. If the testator meant that the income were to be paid generally from the residuary trust as a whole, he would not have added the words " or deficiencies ". This thought accounts for the provision in paragraph FOURTH with respect to the payment of one half " of *her then share* in the principal of *said* trust ". (Emphasis added.) A reading of the will as a whole confirms the prior interpretations by Surrogate Cox and the appellate courts that the testator meant to create in fact three trusts in paragraph FOURTH of the will, namely, two of 15% each and the other of 70% of the fund, the ultimate durations of which trusts to be measured by the life of his daughter. During the existence of such trusts each trust could be used and invaded to make up the monthly minimum payments for the benefit of its respective beneficiary, but not for any other person. If Erica should die before the trusts were exhausted, further contingent provisions for distribution were made, which are not now operative.

Thus, in accordance with the prior decrees herein, the respondent brother is entitled to be paid $350 per month and $300 per month respectively from the first two of such trusts (which together total 30% of the residuary) so long as he and Erica live or until such trusts are exhausted, or as otherwise provided in paragraph FOURTH of the will should respondent die before such funds are exhausted. The third trust, comprising 70% of the residuary, has been held, in law, in trust for Erica; and she was entitled to one half of the principal thereof on reaching

30 years of age (which, it appears, she has received), and she is entitled to receive the income on the remaining one half thereof until she attains the age of 35 years, when such remaining half of her principal share should be paid to her. If she should die before attaining such age, other provisions of the will would become effective.

With respect to the contempt order, entered September 15, 1967, it is observed that in the state of existing decrees appellant was confronted with a difficult legal decision; she duly appealed from the decree entered July 12, 1967; she did not jeopardize the trust assets; and she acted in good faith.

The decree of the Surrogate's Court, New York County, entered July 12, 1967 should be modified on the law and the facts in accordance with this opinion, and as modified, affirmed, with costs and disbursements to all parties filing briefs. The order of such court entered on September 15, 1967 should be reversed on the law and the facts and as a matter of discretion, and the application to punish appellant for contempt of court should be denied, with costs and disbursements to all parties filing briefs.

Stevens, J. (dissenting). I dissent and vote to affirm the decrees herein appealed from. In *Matter of Rosenzweig* (4 Misc 2d 142) Surrogate Collins expressly held " That testator's brother is entitled to the share of the income bequeathed to the widow and terminated by her recourse to section 18 of the Decedent Estate Law " (p. 144). Computation of the widow's share and contribution thereto by the other interests under the will were to be determined in the subsequent accounting proceeding. A decree was entered in accordance with Surrogate Collins' determination. Appeal was taken therefrom. On such appeal the widow, who was both trustee and executrix, contended the decision of the Surrogate permitting the brother to enjoy the undiminished income from the trust after withdrawal of the widow's share of the residue, was error. This court affirmed without opinion (*Matter of Rosenzweig*, 7 A D 2d 969). Subsequently, the widow rendered her account as trustee and as executrix and decrees were entered thereon. In his decision, Surrogate Cox stated the issue as to the *right* of the testator's brother to trust income was *res judicata*. " By reason of the prior determination [that of Surrogate Collins], the brother is entitled to receive 15% of the net income of the residuary *trust* but not less than $300 per month." (*Matter of Rosenzweig's Estate*, 237 N. Y. S. 2d 438, 440.) In the decree entered in accordance with such determination, Surrogate Cox

expressly ordered, adjudged and decreed, that decedent's brother be paid "15% of the net income, but not less than $300 per month from that portion of the trust" established under decedent's will and bequeathed to decedent's wife, of which decedent's brother became the successor in interest.

It was further decreed, if the net income from such portion be less than $300 per month, " to pay from the principal of the aforesaid trust" an amount necessary to make up the deficiency.

This court, on appeal, reversed. We concluded the earlier decision (*Matter of Rosenzweig*, 4 Misc 2d 142, affd. 7 A D 2d 969) and the decree later entered thereon merely declared the status of Emanuel as successor in interest to the estate of the widow, and that such decision was not " *res judicata* on the issue of contributions or value of Emanuel's interest * * * The interest of the widow under the will must first be applied in satisfaction of her elective share and that such application exhausts her interest, leaving nothing to which Emanuel can succeed as her successor in interest." (*Matter of Rosenzweig*, 23 A D 2d 427, 434.) We adopted a concept of separate trusts and pointed out the consequences to Erica if payments of $300 per month to Emanuel were mandated. Much reliance was placed upon *Matter of Curley* (160 Misc. 844) as contrasted with *Matter of Byrnes* (149 Misc. 449).

The Court of Appeals rejected any concept of separate trusts. Its language refers to " the trusts" or " the testamentary trust". While the Court of Appeals noted " there do not appear to be any Court of Appeals or even Appellate Division decisions dealing with this problem [the proper method for satisfying the widow's elective share] " (*Matter of Rosenzweig*, 19 N Y 2d 92, 96), it rejected the method adopted by the Appellate Division and expressly disapproved of *Matter of Curley* (*supra*). The court declared the widow entitled to take her intestate share outright, such share to be satisfied by prorata contributions from each of the legacies, and directed that the decrees of the Surrogate's Court be reinstated. That the Court of Appeals was not unaware or unmindful of effects possibly adverse to Erica may be gleaned from its observation " the real problem with this case was that the testator * * * never thought about what would occur if his wife chose to exercise her right of election. It is no doubt true * * * that if the testator had considered it, the will might have been quite different and that Emanuel might not have come off as well as he did." (*Matter of Rosenzweig*, 19 N Y 2d 92, 99.)

The arguments advanced by appellant in the instant proceeding were raised before Surrogate Cox and rejected. They

118

were accepted later by this court which reversed the decrees appealed from. Such arguments were advanced on appeal to the Court of Appeals and there rejected. As noted, that court reversed the Appellate Division and reinstated the decrees of the Surrogate. The fact that Erica, decedent's daughter, was the appellant on the prior occasion (*Matter of Rosenzweig*, 23 A D 2d 427, revd. 19 N Y 2d 92), and that Aranka, the wife as trustee and executrix, is appellant here should not serve to bar application of the doctrine of *res judicata* (see *Israel* v. *Wood Dolson Co.*, 1 N Y 2d 116). The right of Emanuel to payment of $300 per month as successor in interest to Aranka, the wife of decedent, was established in the earlier cases. It follows that the power to invade the principal of the residuary trust conferred by the will should be exercised, if necessary, to effectuate that right, and give it meaning.

On the contempt issue, the record establishes a willful refusal to pay as directed by the decrees heretofore entered.

EAGER and McGIVERN, JJ., concur with WITMER, J.; STEVENS, J., dissents in opinion, in which BOTEIN, P. J., concurs.

Decree entered July 12, 1967, modified, on the law and the facts, in accordance with the opinion filed herein, and, as so modified, affirmed with $50 costs and disbursements to all parties filing briefs payable out of the estate.

Order entered on September 15, 1967, reversed, on the law and the facts and as a matter of discretion, with $50 costs and disbursements to all parties filing briefs, payable out of the estate, and the application to punish appellant for contempt of court denied.

Settle order on notice.